**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**PAMELA BETH GRIFFIN,**

    **Plaintiff,**

**v.**                                                                  Case No. 8:07-cv-1681-T-TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                         /

## **O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments. For the reasons set out herein, the decision is reversed and remanded.

I.

Plaintiff was 49 years of age at the time of her administrative hearing in August, 2006. She stands 5', ½" tall and weighed 144 pounds. Plaintiff has a ninth grade education. Her past relevant work was as a waitress, cook and counter worker in fast food and a deli worker at a grocery store. Plaintiff applied for Supplemental Security Income payments in May, 2003, alleging disability as of December 17, 2002,[1] by reason of interstitial cystitis,

---

[1] In her application, Plaintiff alleged she became disabled January 1, 2001. However, she amended her date of onset to December 17, 2002, at the administrative hearing in light of her testimony that she last worked on December 16, 2002.

urethral stenosis, spastic bladder, irritable bowel syndrome, endometriosis, chronic pain, and depression. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified she is unable to work because she has problems with her vision and she cannot stand for more than five to ten minutes at a time due to pain in her abdomen, pelvic area, and back. She also has difficulty walking due to pain in her arms, legs and feet. Plaintiff testified her back pain was treated with facet blockers but they did not work. Plaintiff also complained of urinary difficulties related to interstitial cystitis. According to Plaintiff, she uses the restroom up to thirty times during the day and she goes to the bathroom three to four times during the night so she does not get a good night's sleep. She has had epidurals for the interstitial cystitis, but they did not last as long as they were supposed to. Plaintiff takes about ten medications, including ones for pain and suspected multiple sclerosis. By her testimony, the medications cause hair loss, blurred vision, exposure to heat, drowsiness, dizziness, memory problems, hallucinations, hearing impairment and dry mouth.

Plaintiff also testified to mental health problems. At the time of the hearing, Plaintiff was undergoing mental health treatment at Peace River Center. Plaintiff testified she was recently the victim of a home invasion that occurred September 11, 2006. This incident

2

increased her anxieties and depression and prompted her return to Peace River Center.[2] Plaintiff stated that she has transportation problems getting to Peace River Center because she does not drive and cannot afford the $1.50 fare for the bus. Plaintiff lives with a former boyfriend who is abusive; she has been in abusive relationships most of her life.

Plaintiff last worked on December 16, 2002, a date she recalls because she ended up in the emergency room that day for problems with her bladder and acute cystitis. Although she attempted to return to work, she has not worked since that date. In order to receive food stamps, Plaintiff signed up for a program that was to help her find employment. Her counselor from the program told Plaintiff they could not help her find a job due to her medical problems and the medications she was taking.

Plaintiff testified to limited daily activities. She cannot stand for periods of time due to pain and because she gets tired. Plaintiff testified that her life consists of sitting. She does some housework but it takes her a week or longer because she has to do a little at a time. She indicated that she is fatigued during the day and naps a couple of times each day for periods of two to three hours. She cannot make it through an eight-hour period without a nap. Plaintiff testified that the pain in her abdomen occurs quite often during the day. Carrying objects, as well as eating certain types of foods, affect the pain in her bladder area. She stated that she is only able to carry a couple pounds, and even then she sometimes drops things because her arms do not work. She believes those problems are caused by nerve damage.

---

[2]Since the record reflected Plaintiff's treatment at Peace River was in March and April, 2006, the court assumes Plaintiff meant to say that the home invasion occurred in September, 2005, not 2006.

3

Additionally, her back problems prevent her from being able to lift a lot of things. While she is able to read, it is sometimes difficult due to the ten different medications she takes. Plaintiff also reported both bowel and bladder accidents, which have been very embarrassing for her. She wears a pad in case of accidents and is on the verge of needing a diaper due to the fact that she gets migraines that result in violent episodes of vomiting and she urinates all over herself. Plaintiff stays at home because she does not want to be embarrassed or humiliated by having these incidents occur in public. Plaintiff cannot drive because of the medications she is taking and due to the fact she had gotten into an accident going to see one of the Social Security doctors. *See* Plaintiff's testimony (R. 542-61).

The ALJ next took testimony from Patricia Scutt, a vocational expert ("VE"). The VE classified Plaintiff's former employment as a counter/cook at a fast food restaurant, a dishwasher, and a kennel worker as medium exertional work, and her work as a waitress and deli worker as light exertional work. The VE was asked to assume a person of the same age, education, and work background as the Plaintiff who is capable of light work, provided the work does not require more than occasional postural activities; has no more than occasional contact with the public and coworkers; requires only simple, routine one, two step tasks; and is located in close proximity to a restroom. On this hypothetical, the VE opined that Plaintiff could not perform past work as a waitress or deli worker because those positions involve more than occasional contact with the public and do not provide for bathroom access. However, given the same hypothetical, the VE opined that there would be other light and unskilled positions that a person with such limitations could perform. Specifically, the VE identified light exertional positions such as a residential cleaner, a stock checker, and an

4

optical goods packer which could be performed by a similarly situated person as referenced in the hypothetical. When asked to give Plaintiff's testimony full credit as to her limitations regarding sitting, standing, walking, lifting, and carrying, along with the side effects from the medications she takes and her need to take, on average, thirty (30) restroom breaks during the day, the VE opined that such limitations would preclude a person from working. *See* VE's testimony (R. 562-64).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of September 12, 2006, the ALJ determined that while Plaintiff has severe impairments related to interstitial cystitis, a back disorder, a bilateral wrist disorder, and post-traumatic stress disorder, she nonetheless had the residual functional capacity to perform light exertional work that did not require more than occasional climbing, balancing, stooping, kneeling, crouching or crawling; provided for close proximity to a restroom; and was limited to simple, routine, one-two step tasks with only occasional contact with the public or coworkers. Upon this finding and the testimony of the VE, the ALJ concluded that while Plaintiff could not perform any of her past relevant work, she nevertheless could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 15-24). The Appeals Council considered additional evidence and denied Plaintiff's request for review, and thus the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Supplemental Security Income benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are

supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963).
Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff raises two (2) claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ's pain and credibility determination in this case was improper; and

(2) The ALJ did not credit all of Ms. Griffin's limitations.[3]

---

[3]Although Plaintiff submitted additional evidence to the Appeals Council, she does not challenge its decision denying review. Accordingly, based on my reading of *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir.2007), the holding in *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998), applies and the evidence submitted to the Appeals Council need not be considered. *See Ingram*, 496 F.3d at 1266 ("We understand *Falge* to hold that when a claimant challenges the [ALJ's] decision to deny benefits, but not the decision of the Appeals Council to deny review of the [ALJ], we need not consider evidence submitted to the Appeals Council."); *see also Tucker v. Astrue*, No. 8:07-cv-621-T-TGW, 2008 WL 2811170, *7-9 (M.D. Fla. 2008).

By her first claim, Plaintiff challenges the ALJ's application of this Circuit's "pain standard." First, Plaintiff contends that the ALJ failed to consider the second part of the standard, i.e., whether there is an objectively determined medical condition of a severity that can reasonably be expected to give rise to the alleged pain. According to Plaintiff, this part of the standard is met by the severity of her bladder condition, which is well documented in the record. Because the standard is met, Plaintiff contends that the ALJ then should have evaluated the intensity, persistence, and limiting effects of her symptoms to determine the extent to which the symptoms alleged limited her ability to work, and his failure to do so constitutes error.[4] Additionally, Plaintiff contends the same condition satisfies the first part of the standard in that there is medical evidence confirming the severity of her pain. Next, Plaintiff contends that the ALJ's sole reason for rejecting her allegations of disabling symptoms for interstitial cystitis ("IC"), namely, the lack of complaints of frequent urination, is inadequate and unsupported. Plaintiff also contends that the ALJ mischaracterized certain of the complaints she made to her doctors about her urinary frequency, possible infections, pain, and leakage. Further, Plaintiff contends the ALJ erred by failing to mention her abdominal pain and pain on urination and provide reasons for discounting those allegations. To this end, Plaintiff notes that the ALJ appears to have rejected her claim that she could only stand for about five to ten minutes on the basis that there was insignificant evidence of a musculoskeletal impairment that would affect her ability to stand or walk to that degree, but

---

[4]In support of these arguments, Plaintiff relies on Social Security Ruling ("SSR") 02-2p, which provides guidance on the SSA's policy concerning the development and evaluation of interstitial cystitis in disability claims. *See* SSR 02-2p, 2002 WL 32063799 (S.S.A.).

8

the ALJ failed to consider that the limitation resulted from abdominal and pelvic pain caused by her IC. In light of these errors, Plaintiff urges the court to remand her case for proper evaluation of her limitations. (Doc. 16 at 15-21).

The Commissioner counters that the ALJ's evaluation of Plaintiff's subjective complaints complied with the regulations and Eleventh Circuit authority. According to the Commissioner, the ALJ adequately discounted Plaintiff's claims of urinary frequency by noting the discrepancies between Plaintiff's testimony and the statements she made to doctors. In particular, the Commissioner points to the ALJ's statement that Plaintiff did not express to her doctors that she urinates 30 times a day. The Commissioner also contends that Plaintiff's reliance on SSR 02-2p and her complaints of urinary infections; pain; and urinating once an hour, two to four times a night, or ten to eleven times a day does not establish otherwise. Finally, the Commissioner notes that the ALJ properly considered her complaints of frequent urination by imposing a limitation that she work in close proximity to a restroom. (Doc. 17 at 4-8).

Here, Plaintiff testified that she "can go [to the restroom] up to 30 times or more" during the day, and 3 to 4 times at night. (R. 553). She also testified that she had told her doctor about the frequency of her urination and that he told her she had to learn to control it. (R. 554). Plaintiff testified further that she could stand for only about 5 or 10 minutes; after that, she experiences abdominal and pelvic pain. (R. 549-50). The ALJ considered Plaintiff's subjective allegations in determining her residual functional capacity at step four of the sequential evaluation. To this end, the ALJ concluded that:

> The record fails to provide any objective medical evidence
> that the claimant's impairments are as severe as her hearing
> testimony indicates. There is absolutely no evidence that the
> claimant must use the bathroom as frequently as she alleges.
> She made no mention of urinary frequency to the
> consultative examiner and the records of her urologist show
> few mentions of urinary frequency. The undersigned would
> expect that an individual who must use the bathroom 30
> times a day would mention it to her physician. The
> claimant's urologist did note on April 30, 2003, that
> 'interstitial cystitis is no[t] a disability reason.' Furthermore,
> the record reveals no significant evidence of musculoskeletal
> impairment which would affect the claimant's ability to
> stand or walk to the degree alleged. The records of the pain
> center where the claimant is treated show that the claimant's
> pain is frequently reported to only a two or three on a scale
> of 10. Furthermore, the objective testing revealed only
> minimal impairment. The [ALJ] can find no mention of
> medication side effects in the evidence of record. Although
> the claimant has asserted that she exhibits significant
> impairments, the totality of the evidence fails to support the
> existence of any significant pathology capable of producing
> such severe and debilitating limitations as alleged by the
> claimant. To the extent that the claimant alleges being
> totally precluded from work-related activities, these
> subjective complaints regarding the severity of limitations
> caused by her impairments are considered not fully credible
> and not supported by the medical record.

(R. 20). The ALJ also noted that no treating or evaluating physicians have opined that Plaintiff is unable to work. By Plaintiff's argument, the ALJ failed to correctly apply this circuit's pain standard and his reasons for discounting her subjective complaints were insufficient.

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *Wilson*, 284 F.3d at 1225. By this standard, there must be

evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id.* (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Holt*, 921 F.2d at 1223; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Wilson*, 284 F.3d at 1225 (citing *Hale*, 831 F.2d at 1011); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Wilson*, 284 F.3d at 1225 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012.

Upon careful consideration, I conclude that a remand is warranted because I am unable to ascertain whether the ALJ fully complied with the applicable standard when assessing Plaintiff's subjective allegations. Here, the ALJ did not cite to Eleventh Circuit authority, but he clearly was aware of the correct standard because he specifically cited to the regulatory provisions at 20 C.F.R. § 416.929, as well as Social Security Ruling 96-7p. (R. 19). However, upon a fair reading of the decision, I am unable to determine whether the

11

ALJ was faithful to that standard.[5] The ALJ found that the evidence demonstrated that Plaintiff's objectively determined medical conditions, i.e., interstitial cystitis, a back disorder, a bilateral wrist disorder, and post-traumatic stress disorder, were of such severity that they could reasonably be expected to give rise to the symptoms alleged, just not to the extent alleged. However, as urged by Plaintiff, I cannot determine whether the ALJ fairly considered all of Plaintiff's subjective allegations with regards to interstitial cystitis. As indicated above, the primary complaints Plaintiff attributed to this impairment were urinary frequency and abdominal and pelvic pain. While the ALJ considered Plaintiff's testimony with respect to urinary frequency,[6] it is not possible to tell whether he considered her complaints of pelvic and abdominal pain. As Plaintiff suggests, the ALJ discounted her stated

---

[5]Contrary to Plaintiff's assertion, I do not find that the evidence demonstrates that the first prong of the pain standard was met. Plaintiff suggests that the ALJ's finding that the first prong is not satisfied is not supported by substantial evidence and she points to evidence indicating chronic inflammation in the bladder neck (thus demonstrating chronic infections) and submucosal hemorrhages typical of interstitial cystitis in the area of the trigone and the floor of the bladder. (Doc. 16 at 16-17). Without more, that evidence simply does not confirm the severity of complaints alleged by Plaintiff at the hearing.

[6]To this end, the ALJ found that no evidence supports Plaintiff's allegations of urinating 30 times a day. Here, Plaintiff testified that she could have to use the restroom *up to 30 times a day*, not that she urinated 30 times a day every day. To the extent that the ALJ discounted Plaintiff's complaint of frequent urination on the basis that she did not report to her doctors that she urinated 30 times a day, I find the reason somewhat disingenuous. The record is replete with complaints of frequent urination as well as complaints related to such including urinary pain, leakage, accidents, infection, and abdominal pain. *See, e.g.* (R. 156, 196, 236, 245, 247, 278, 288, 293, 294, 295, 368, 369-72, 501, 518). Similarly, while the consultative examiner did not report how many times per day Plaintiff used the restroom, IC related complaints were noted. Additionally, the ALJ obviously credited the complaints to some extent because he found that Plaintiff had to work in close proximity to a restroom. However, he did not address how many times per day she must be able to use the restroom. Given that Plaintiff was limited to unskilled work, the frequency of restroom use may be an important consideration and should have been addressed.

inability to walk or stand for more than 5 or 10 minutes on grounds that her back impairment would not cause such a severe limitation.[7] The ALJ did not mention Plaintiff's pelvic and abdominal pain when considering that allegation, nor did he address it with respect to any other alleged limitation. Given the record support for these allegations, *see, e.g.,* (R. 156, 196, 236, 245, 293, 518), as well as the VE's testimony if Plaintiff's complaints were fully credited, the ALJ should have addressed them. As recognized by the SSA, pain related to interstitial cystitis may limit an individual's exertional functions such as standing and walking. *See* SSR 02-2p. My review of the decision also fails to reveal full and fair consideration of medical records related to such. For this reason, remand for further consideration is warranted.

Because remand is required on the above ground, Plaintiff's other issue need not be addressed. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986).

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards. The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order. Accordingly, the

---

[7] While not challenged, it is worth noting that Plaintiff was treated repeatedly for low back pain; diagnosed with lumbar radiculopathy and spondylosis; and treated with caudal, epidural, and facet joint injections. *See* (R. 274-90, 303-16).

13

Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 18th day of February 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record